UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

JEREMY AUMAN, individually                    Case No.: 17-cv-2848
and on behalf of all others similarly situated,

        Plaintiff,

      v.                                          **CLASS ACTION COMPLAINT**

CONFIDE, INC., a Delaware Corporation,          **DEMAND FOR JURY TRIAL**

        Defendant.

-----------------------------------------------------------X


      Plaintiff Jeremy Auman brings this Class Action Complaint and Demand for Jury Trial

against Defendant Confide, Inc. ("Confide"), based upon its practice of fraudulently inducing

consumers to purchase premium subscriptions to its encrypted messaging application that fail to

deliver the promised upgraded security features. Plaintiff Auman alleges as follows upon

personal knowledge as to himself and his own acts and experiences and, as to all other matters,

upon information and belief, including investigation conducted by his attorneys:

## <u>NATURE OF THE ACTION</u>

      1.     In the aftermath of the well-publicized Snowden revelation—and the public

realization that state and non-state actors can, and are, monitoring individuals' professional and

personal communications—there has been a surge in public demand for security and privacy in

digital exchanges.

      2.     This demand created a market for messaging applications that promise consumers

privacy and confidentiality from such surveillance. As high-profile breaches—such as the leaked

emails from the Democratic National Committee—continued at a feverish pace, the market for confidential messaging applications expanded rapidly.

3.      Confide is one of a number of players that have sought to capitalize on this surging public demand. It operates a multi-platform messaging application (the "App") that claims to offer consumers a confidential means of sending digital communications without fear of their communications being monitored or recorded.

4.      Indeed, Confide represents that the App allows its users to "[c]ommunicate digitally with the same level of privacy and security as the spoken word."[1] But, as Confide acknowledges, that level of privacy and security cannot be achieved through encrypting messages alone. Rather, to attain that level of confidentiality, messages must be "[e]ncrypted[, e]phemeral[, and s]creenshot protected[.]"[2]

5.      Confide's App purports to offer a means of communication whereby each of these elements of confidentiality is satisfied. Confide claims that by using its App, consumers can communicate "without fear of the Internet's permanent, digital record and with no copies left behind."[3]

6.      Confide's representations were, in fact, so persuasive, that multiple members of the Trump administration publically acknowledged that they were using Confide's App for confidential communications related to matters of national importance. And in some cases, it appeared, utilizing it to leak information from the White House. As *Wired* recently reported:

> [M]ultiple reports indicate that Republican operatives and White House staffers
> are using the end-to-end encrypted messaging app Confide, which touts

---

[1]      *See Your Confidential Messenger*, Confide, https://getconfide.com (last visited April 20, 17).

[2]      *Id.*

[3]      *Id.*

disappearing messages and anti-screenshot features, to chat privately without a trace.[4]

7.      Contrary to Confide's representations, the App fails to protect communications its users send through it, and it fails to offer the unequivocal confidentiality advertised by Confide. Specifically, Confide fails to deliver on two of the three requirements that it espouses as necessary for confidential communications: ephemerality and screenshot protection. Absent these protections, Confide knows that it cannot deliver on its promise to consumers that communications sent through it will be confidential.

8.      Unfortunately, Confide continues to induce consumers into using the App and paying for additional features by still representing that it is secure. To obtain redress from these deceptive marketing practices, Plaintiff Auman, on behalf of himself and a putative Class, brings this lawsuit seeking damages and injunctive relief sufficient to halt Confide's ongoing deceptive conduct.

## PARTIES

9.      Plaintiff Jeremy Auman is a natural person and citizen of the State of Michigan.

10.     Defendant Confide, Inc. is a company organized and existing under the laws of the State of Delaware, with its headquarters and principal place of business located at 902 Broadway, 7th Floor, Suite 19, New York, New York 10010.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the putative Class is a citizen of a state different from Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under the subsection apply to this action.

---

[4]     *Encryption App Confide Helps White House Staffers Leak---And Maybe Break the Law | WIRED*, https://www.wired.com/2017/02/white-house-encryption-confide-app/ (last visited April 18, 2017).

12.     This Court has personal jurisdiction over Defendant because it transacts significant business in this District, including soliciting consumer business and entering into consumer and business contracts in this District, and the unlawful conduct alleged in the Complaint occurred in and emanated from this District.

13.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant transacts significant business in this District, a substantial part of the events giving rise to the Complaint occurred in and emanated from this District, and the Parties have contractually agreed that this forum is proper for resolution of this dispute.

## FACTUAL BACKGROUND

14.     Confide was incorporated in 2013 to develop, market, and sell communications applications. Confide's main product is its Confide App that it markets as a confidential messaging platform. Using the Confide App, which is available for Android, iOS, Windows, and macOS devices, consumers can communicate to others who are also using App and transmit text, video, audio, and various file types.

15.     Confide offers a "basic" version of the App for free and a "plus" (i.e., premium) version for a monthly fee. Both versions promise, *inter alia*, (1) ephemeral messages, (2) end-to-end encryption, and (3) screenshot protection.[5] For instance, Confide represents that messages sent through the App are ephemeral. Specifically, that after a message is "read once, [it is] gone…[n]o forwarding, no printing, no saving…no nothing."[6]

16.     Confide's representations regarding screenshot protection are much the same. Confide acknowledges that screenshots "have the potential of making the impermanent permanent." (*See* Figure 1.) Much like the concept of ephemeral messages, by precluding

---

[5]     Id.

[6]     *Id.*

screenshots of any messages from being taken, a permanent record of the message can be prevented.

> ## Screenshot Protected
>
> Screenshots have the potential of making the impermanent permanent. Confide prevents screenshots on most of our platforms. Where prevention is not technically feasible, our patent-pending reading experience ensures that only a sliver of the message is unveiled at a time and that the sender's name is not visible. We also kick the recipient out of the message and notify the sender that a screenshot has been attempted.

(**Figure 1**, describing Confide's screenshot blocking technology and its mechanism of showing only a "sliver" of a message)[7]

17.     In line with this, Confide purports to "prevent[] screenshots on most of [its] platforms[,]" and, "[w]here prevention is not technically feasible, [its] patent-pending reading experience ensures that only a sliver of the message is unveiled at a time and that the sender's name is not visible."[8] (*See* <u>Figure 1</u>.)

18.     Confide prevents screenshots from being taken on mobile devices by modifying the functionality of the device so that such an image cannot be taken. Likewise, when viewing a message on a mobile device, a user cannot see any portion of the message in conjunction with the name of the sending party. Removal of the sending party adds a further level of protection: even if the recipient saved the contents of the message, it would not be obviously attributable to the sender.

---

[7]     *Id.*

[8]     It is generally accepted that it is technically feasible to block screenshots on Android (e.g., Samsung Galaxy) and iOS (e.g., iPhone) mobile devices.

19.    When the messages are viewed through Confide's desktop applications (e.g., Windows and macOS), Confide seemingly modifies its application's user interface so that any screenshot taken is returned as a gray or black screen. (*See* <u>Figure 2</u>.)



Screenshot attempts on Mac (left) and Windows (right)

(**<u>Figure 2</u>**.)[9]

20.    Beyond blocking screenshots, Confide represents the App will purportedly alert both the sender and recipient of a message if the recipient has attempted to take a screenshot, and then kick the offender out of the message. (*See* <u>Figure 1</u>.)

21.    As acknowledged by Confide through its representations, preserving the confidentiality of any message requires the combination of encryption, ephemerality, and screenshot protection. If the messaging platform fails to provide any one of these factors, messages sent through that platform are not truly confidential.

***Confide Does Not Provide Its Advertised Features***

22.    Unbeknownst to consumers, Confide's App fails to satisfy its own criteria for confidentiality. Specifically, Confide failed to engineer its Windows version of its App with screenshot protection. And in so doing, Confide ensured that any message sent through its

---

[9]       *Confide Brings Off-the-Record Messaging to Desktop*, Confide (Aug. 18, 2015), https://blog.getconfide.com/confide-brings-off-the-record-messaging-to-desktop-c6b4457eb3ea (last visited April 18, 2017).

messaging platform is (and has been) at risk of storage. Consumers who erroneously thought

they were using a secure platform to send confidential and potentially compromising information

are now at great risk of having that information used against them.

23.     As introduced above, Confide represents, in no uncertain terms, that its App

blocks screenshots. But that isn't true. Any Confide user accessing the platform through the

Windows App *can* take screenshots of any and all received messages. Those screenshots can

include the entire content of the message as well as the identity of the sending party, despite

Confide's explicit claims that such information would not be visible at the same time (i.e., only a

"sliver" of the text would be visible).

24.     As Figure 3 shows, it is possible to take screenshots that capture the name of the

sender (Sending Party), as well as the full content of the message sent by the Sending Party:



(**Figure 3**, a screenshot taken of a message received on the Windows desktop
version of the App after deactivating "enable desktop composition.")

25.     As such, each of Confide's representations that the App prevents screenshots is

patently false.

26.     To make matters worse, many of the other security features that Confide claims protect its messages also fail to operate on the desktop versions of the App. Confide represents that even if a party can somehow take a screenshot, it would alert the sender and remove the offender from the message. By alerting the sender, Confide is putting them on notice that their messages can no longer be considered confidential (and the sender will undoubtedly stop sending confidential communications).

27.     In reality, Confide does not notify anyone when a screenshot is taken when the recipient uses the macOS or Windows App. Worse, the offending party taking the screenshot is never removed from the message, ensuring that the sender continues sending confidential or otherwise sensitive information, pictures, or videos.

28.     Likewise, Confide did not design its macOS or Windows desktop Apps with the "sliver" feature enabled (i.e., to reveal only a "sliver" of the text as represented). Nor did Confide design its desktop Apps to ever hide the name of the sending party. As Figure 4 shows (through a photograph taken with a camera), Confide did not program either version of the desktop app to hide the sender's name or to otherwise obscure the content of the messages.  Confide's design failure allows for a recipient to use a camera to capture the full content of each message as well as the identity of the sending party:

              *                          *                          *



              *                          *                          *





(**Figure 4**, showing digital photographs capturing the content of messages received on the Windows (top) and macOS (bottom) versions of the App.)

29.     Ultimately, and despite Confide's promises, the App does not prevent screenshots of messages (or pictures or videos) sent through the App—whether taken via an operating system's internal screenshot mechanism or camera photography. As a result, Confide's promises of ephemerality are rendered false. Message recipients can easily create permanent records of the purportedly secured messages.

30.     By failing to offer the protections it advertised, Confide not only fails to maintain the confidentiality of messages sent or received by desktop App users, but its entire user base. Though a consumer may use the App for iOS, which effectively blocks screenshots, the consumer might be sending a message to a user reading the message on the Windows App,

through which they can freely screenshot the message for later use. That is, because the sender is ignorant of the means through which recipient will read the message (e.g., Android, iOS, or Windows) the sender essentially loses *all* protections against screenshots. And, again contrary to Confide's express representations, if the recipient does screenshot and preserve a message the sender of those messages will *never* receive any warning that the screenshot attempt occurred at all, let alone successfully.

31.     Confide deceived consumers into believing that its messaging platform would allow them to send and receive messages with screenshot protection even when it didn't design Apps to provide those protections. Consumers relied on Confide's representations, sent secretive, confidential, and intimate messages, and even paid for additional features, all under false pretenses. Each of which was exposed to potential duplication, storage, and exploitation, and none of which featured Confide's self-professed elements of "confidentiality."

## FACTS SPECIFIC TO PLAINTIFF AUMAN

32.     Plaintiff Jeremy Auman purchased a monthly subscription to Confide's App on or around January 13, 2017 for $6.99 a month.

33.     Auman purchased his subscription to the App based on Confide's representations that it provided a "confidential" messaging platform and its representations that his messages would be secure from any potential duplication or preservation due to its repeated promises of message ephemerality and screenshot protection.

34.     Auman used the App to send confidential communications, including text and pictures.

35.     As discussed above, the messages Auman sent through the App did not feature the security measures expressly promised by Confide in its marketing materials. Each of the messages sent by Auman through the App were subject to duplication and permanent storage.

36.     Had Auman known that Confide did not offer the confidentiality and security features that it marketed to consumers, he would not have downloaded or used the App or paid for a subscription to the App.

37.     Plaintiff ceased using the App to send confidential and secure messages and cancelled his subscription after finding out that Confide did not offer the confidentiality and security features as represented in its marketing materials.

## CLASS ALLEGATIONS

38.     **Class Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and a class of similarly situated individuals, defined as follows:

> **Class**: All persons in the United States who (1) paid Confide for a subscription; (2) after August 2015.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Confide, Confide's subsidiaries, parents, successors, predecessors, and any entity in which the Confide or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Confide's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

39.     **Numerosity**: The exact number of members of the Class is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable. The Class

likely consists of millions of individuals. Class members can be easily identified through Confide's records.

40.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to the following:

a)     Whether Confide's representations were designed to mislead consumers into subscribing to the App;

b)     Whether Confide's conduct described herein violates New York's Deceptive Practices Law (N.Y. Gen. Bus. Law § 349);

c)     Whether Confide's conduct described herein violates New York's False Advertising Law (N.Y. Gen. Bus. Law §§ 350 *et seq.*); and

d)     Whether Confide's conduct described herein constitutes fraudulent inducement.

41.     **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Confide's uniform wrongful conduct during transactions with Plaintiff and the Class.

42.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Confide has no defenses unique to Plaintiff.

43.     **Policies Generally Applicable to the Class**: This class action is also appropriate for certification because Confide has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief

appropriate with respect to the Class as a whole. Confide's policies challenged herein apply and affect the members of the Class uniformly and Plaintiff's challenge of these policies hinges on Confide's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

44.    **Superiority**: This case is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The injuries suffered by the individual members of the Class are likely to have been relatively small compared to the burden and expense of individual prosecution of the litigation necessitated by Confide's actions. Absent a class action, it would be difficult, if not impossible, for the individual members of the Class to obtain effective relief from Confide. Even if members of the Class themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court and require duplicative consideration of the legal and factual issues presented herein. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

**<u>FIRST CAUSE OF ACTION</u>**
**Violation of New York's Deceptive Practices Law**
**N.Y. Gen. Bus. Law § 349**
**(On Behalf of Plaintiff and the Class)**

45.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

46.    Plaintiff and members of the Class entered into agreements with Confide whereby Plaintiff and the members of the Class agreed to submit to the exclusive personal jurisdiction of

the state and federal courts of the State of New York, and that the internal substantive laws of the State of New York would control the agreement between the Parties.

47.     Confide's corporate headquarters are in New York, New York. It made the App in New York, New York. The marketing representations and advertisements at issue were developed in New York, and the internal approval for their use in commerce occurred in New York.

48.     Confide directs consumer inquiries and comments to support@getconfide.com, which, upon information and belief, is accessed and managed by Confide's staff in New York.

49.     Additionally, Plaintiff and the Class members' subscription payments were all processed electronically and received by Confide in New York.

50.     New York's Deceptive Practices Law, Gen. Bus. Law § 349, protects consumers against "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in the state of New York.

51.     As described herein, Confide engaged in deceptive business practices by, among other things, misrepresenting that the App possessed confidentiality features that it did not possess and using those misrepresentations to induce consumers (like Plaintiff and the Class) into subscribing to the App.

52.     Specifically, Confide represented that the App had certain features to ensure that screenshots could not be taken of messages sent through the App. Confide also represented that the App had security measures in place to ensure the ephemerality of any messages sent through the App. Confide made these representation despite the fact that message recipients could take screenshots of messages sent through the App, and that photographs could be taken of the full content of messages as well as the identity of the messages' senders.

53.     Confide intentionally misrepresented the security features of the App and failed to correct those misrepresentations, because they knew those misrepresentations had induced consumers into purchasing subscriptions to the App, and the correction would have resulted in a loss of subscribers.

54.     Confide's deceptive statements regarding the security features of the App were materially untrue, misleading, and likely to deceive the public inasmuch as their advertisements and statements caused reasonable consumers, including Plaintiff, to mistakenly believe that the App had the security features that Confide advertised it as possessing.

55.     Confide's material misrepresentations regarding the security features of the App directly affected Plaintiff's and the Class members' choices to subscribe to the App.

56.     Plaintiff and the Class chose to subscribe to Confide's App specifically because of Confide's promises that the App offered security features advertised and ensured the confidentiality of messages sent through the App.

57.     Plaintiff and the Class reasonably viewed the representations made by Confide regarding the App as true, and as a direct and proximate result, subscribed to the App based on the representations that it offered specific security measures to ensure the confidentiality of messages sent through the App.

58.     Had Confide corrected its misrepresentations and clarified that the App did not actually have the security features it advertised, or the ability to provide confidential messaging, Plaintiff and thousands of consumers would have chosen alternative products that provided additional security measures which the App did not.

59.     Plaintiff and the Class could not have known that the App did not have the features that Confide advertised at the time they entered into their subscriptions because all the

information required to do so was within Confide's control at the time their subscriptions were purchased.

60.     Accordingly, had Plaintiff and the Class known that the App did not provide the security features that Confide represented it as possessing, they would not have been willing to use the App and pay for a monthly subscription.

61.     Thus, as a direct and proximate result of Confide's deceptive practices, Plaintiff and the Class have suffered actual injury in the form of payment to Confide and a loss of privacy.

62.     Although the features provided to Confide subscribers (i.e., those who paid money to Confide beyond the free app) still have some utility, their utility has been greatly diminished as a result of Defendant's misrepresentations. If Defendant had provided the App as advertised (i.e., the App was actually secure and blocked screenshots), Plaintiff and members of the Class could use the subscription features at the level expected. But because Defendant did not provide the App as advertised, Plaintiff and members of the Class cannot use the subscription features in the way contemplated at the time they purchased the subscriptions (when they thought the App was secure).

63.     For instance, Plaintiff and members of the Class contemplated using the message retraction feature to recall messages they did not intend to send. But because they cannot use the App to send any messages that could warrant retraction, this feature has little value. Similarly, the "themes" included in the subscription only have value if the sender is able to send messages that warrant the use of a purportedly secure app (as opposed to email, IM, or myriad other communication methods). Since the circumstances in which Plaintiff and members of the Class can use the add-on are severely restricted, the subscription is only worth a portion of its list price, a portion to be determined at trial.

64.     By all of the above, Confide engaged in willful and knowing violations of N.Y. Gen. Bus. Law § 349 by engaging in deceptive and materially misleading business practices directed at consumers, which caused consumers actual harm.

65.     Therefore, Plaintiff, on behalf of himself and the Class, seeks an order pursuant to N.Y. Gen. Bus. Law § 349(h) awarding a minimum of $50 in damages to Plaintiff and each Class member who suffered injury as a result of Confide's deceptive practices.

66.     Because Confide's conduct was willful and knowing, Plaintiff and the putative Class seek treble damages pursuant to N.Y. Gen. Bus. Law § 349(h).

### SECOND CAUSE OF ACTION
**Violation of New York's False Advertising Law**
**N.Y. Gen. Bus. Law §§ 350 *et seq.***
**(On Behalf of Plaintiff and the Class)**

67.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

68.     Confide engaged in advertising and marketing to consumers throughout the United States, including in New York, that induced them to subscribe to the App by promising them that the App featured certain security features to ensure the confidentiality of messages sent through it.

69.     As described herein, Confide engaged in false advertising by, among other things, misrepresenting that the App had security protections that prevented screenshots of the content of messages from being taken, as well as protections that would limit the amount of a message's content displayed at the same time.

70.     Specifically, Confide represented that the desktop version of the App "prevent[ed] screenshots altogether."[10] Confide made this representations despite the fact that the Windows desktop version of the App failed to prevent screenshots of messages from being taken.

---

[10]     *Frequently Asked Questions*, Confide, https://getconfide.com/faq (last visited April 20, 17).

71.     Confide also represented that the content of a message would not be simultaneously displayed in conjunction with the identity of the individual that sent the message. Those representations were false: both macOS and Windows versions of the App always show the full content of a message in conjunction with the identity of the sending party.

72.     Confide further promised that its messages were ephemeral, and thus could not be saved, printed, or forwarded. That representation was also false: the Window's desktop version of the App allows for screenshots to be taken. Additionally, both desktop versions of the App allow for photographs to be taken of full messages in conjunction with the identity of a message's sender.

73.     Confide made these representations with the intent to induce consumers into purchasing subscriptions to the App for its perceived—but non-existent—features that purportedly provided confidentiality of messages sent through the App.

74.     Confide's advertising and marketing statements regarding the features of the App were materially untrue, misleading, and likely to deceive the public inasmuch as their advertisements and statements caused consumers to mistakenly believe that the App contained the specific features represented in those statements (including screenshot protection, message ephemerality, and the confidentiality of any message sent through the App).

75.     Plaintiff and members of the Class were exposed to and relied on Confide's statements in deciding to subscribe to the App and paying the monthly subscription fee.

76.     Plaintiff and the Class could not have known that the App did not have the features that Confide advertised it as possessing at the time they entered into their subscriptions because all the information required to do so was within Confide's control at the time their subscriptions were purchased.

77.     Accordingly, had Plaintiff and the Class known that the App did not provide the security features that Confide represented it as possessing, they would not have been willing to use and pay for a monthly subscription.

78.     Thus, as a direct and proximate result of Confide's deceptive practices, Plaintiff and the Class have suffered actual injury in the form of payment to Confide.

79.     Although the features provided to Confide subscribers (i.e., those who paid money to Confide beyond the free app) still have some utility, their utility has been greatly diminished as a result of Defendant's misrepresentations. If Defendant had provided the App as advertised (i.e., the App was actually secure and blocked screenshots), Plaintiff and members of the Class could use the subscription features at the level expected. But because Defendant did not provide the App as advertised, Plaintiff and members of the Class cannot use the subscription features in the way contemplated at the time they purchased the subscriptions (when they thought the App was secure).

80.     For instance, Plaintiff and members of the Class contemplated using the message retraction feature to recall messages they did not intend to send. But because they cannot use the App to send any messages that could warrant retraction, this feature has little value. Similarly, the "themes" included in the subscription only have value if the sender is able to send messages that warrant the use of a purportedly secure app (as opposed to email, IM, or myriad other communication methods). Since the circumstances in which Plaintiff and members of the Class can use the add-on are severely restricted, the subscription is only worth a portion of its list price, a portion to be determined at trial.

81.     By all of the above, Confide engaged in willful and knowing violations of N.Y. Gen. Bus. Law §§ 350 *et seq.*, falsely advertising the features of the App, which materially misled consumers and caused them actual harm.

82.     Therefore, Plaintiff, on behalf of himself and the Class, seeks an order pursuant to N.Y. Gen. Bus. Law §§ 350 *et seq.* awarding a minimum of $500 in damages to Plaintiff and each Class member who suffered injury as a result of Confide's false advertising.

83.     Because Confide's conduct was willful and knowing, Plaintiff and the putative Class members seek treble damages pursuant to N.Y. Gen. Bus. Law § 350-e(3).

84.     Further, Plaintiff, on behalf of himself and other members of the Class, seek an order under N.Y. Gen. Bus. Law § 350-e(3) enjoining Confide's unlawful advertising practices described herein.

### THIRD CAUSE OF ACTION
**Fraudulent Inducement**
**(On Behalf of Plaintiff and the Class)**

85.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

86.     By representing that the App possessed screenshot protection and other features to ensure the ephemerality of any messages sent through the App, Confide falsely represented the App possessed security features that it did not, in fact, posses. Confide made these statements with knowledge of their falsity.

87.     Confide misrepresented the security features of the App specifically with the intention of inducing consumers who would not otherwise subscribe to the App, or would otherwise have subscribed to its competitors, to do so.

88.     Confide's misrepresentations were successful. As a direct result of its misrepresentations regarding the App's security features, numerous consumers subscribed to the App.

89.     Plaintiff was one such customer. After viewing Confide's representations regarding the security features of the App, as well as its statements that messages sent through the App would be confidential because it possessed those features, Plaintiff subscribed to the App. Had Confide not misrepresented the actual features of the App, Plaintiff would not have paid to subscribe to the App.

90.     In light of the foregoing, Plaintiff Auman seeks an order requiring Confide to pay actual and compensatory damages.

91.     Plaintiff further requests that if the Court finds that Confide's conduct and misrepresentations were made with malice and in conscious disregard for Plaintiff and the Class's rights, they should be awarded punitive damages against Confide in an amount to deter such conduct in the future.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Auman, individually and on behalf of the Class, respectfully requests that the Court enter an order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Auman as representative of the Class, and appointing his counsel as Class Counsel;

B.     Declaring that Confide's actions, as set out above, constitute violations of N.Y. Gen. Bus. Law § 349 and N.Y. Gen. Bus. Law §§ 350 *et seq.*, and fraudulent inducement;

C.     Awarding actual damages and punitive damages where applicable, to Plaintiff and the Class in an amount to be determined at trial;

D.     Awarding appropriate restitution to Plaintiff Auman and the Class in an amount to be determined at trial;

E.      Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia,* an order prohibiting Confide from engaging in the wrongful and unlawful acts described herein;

F.      Awarding reasonable litigation expenses and attorneys' fees;

G.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

H.      Awarding such further and other relief the Court deems reasonable and just.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.


Dated:  White Plains, New York
        April 20, 2017

                              Respectfully submitted,

                              KURZMAN EISENBERG CORBIN & LEVER, LLP


                              By:
                                  John C. Re (JR7239)
                              One North Broadway
                              White Plains, New York 10601
                              jre@kelaw.com
                              Tel: 914-285-9800
                              Fax: 914-993-6009


                              Benjamin H. Richman*
                              EDELSON PC
                              350 North LaSalle Street, 13th Floor
                              Chicago, Illinois 60654
                              brichman@edelson.com
                              Tel: 312.589.6370
                              Fax: 312.589.6378


                              *Pro hac vice admission to be sought

                              *Attorneys for Plaintiff and the Putative Class*